**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT ALEXANDER TUFT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2529 |
| | § | |
| BRENDA CHANEY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a state inmate proceeding *pro se*, filed this section 1983 lawsuit complaining of violations of his civil rights by various prison officials and employees. Defendants filed a motion for summary judgment (Docket Entry No. 61), to which plaintiff filed a response (Docket Entry No. 73). The parties then exchanged a reply to the response (Docket Entry No. 76), a surreply (Docket Entry No. 77), a response to the surreply (Docket Entry No. 81), and a supplemental reply (Docket Entry No. 85).

After carefully reviewing the motion, the response, the related pleadings, the record, and the applicable law, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment, and enters further orders, as follow.

*Factual Background and Claims*

Plaintiff, a state inmate incarcerated at the Jester III Unit of the Texas Department of Criminal Justice (TDCJ), alleges that his constitutional and federal statutory rights were violated by (1) strip searches performed or observed by female officers; (2) deliberate

indifference to his serious medical needs; (3) deliberate indifference to his health and safety; and (4) violations of the Americans with Disabilities Act (ADA). He seeks declaratory and injunctive relief and recovery of punitive damages. Defendants move for summary judgment dismissal of these claims for lack of merit and/or failure to exhaust, and raise entitlement to qualified immunity.

Defendants provided plaintiff an initial and supplemental disclosure of relevant documents (Docket Entries No. 56, 57), and the Court finds that plaintiff was afforded adequate discovery to respond to the pending motion for summary judgment.

### *Motion to Strike*

On June 25, 2008, the Clerk of Court docketed a pleading entitled, "Plaintiff's First Supplement to His Response to Defendant's Motion for Summary Judgment" (Docket Entry No. 78). The document was typewritten and unsigned, and attached what purported to be thirty-eight pages of unauthenticated photocopies of 2004 ADA architectural guidelines. Defendants filed a motion to strike the photocopies as unauthenticated and incompetent summary judgment evidence that was not probative of any exhausted, relevant issue. (Docket Entry No. 80). A flurry of responses and counter-responses ensued (Docket Entries No. 82, 83, 84, 86, 87, 88, 89), which will now culminate in this Court's granting of the motion to strike. Although the supplement (Docket Entry No. 78) attempts to incorporate its attached documents into the document verification appearing in plaintiff's original response to the motion for summary judgment, the supplement is unsigned. As such, it cannot act as

an incorporation by reference into an existing pleading, as plaintiff has not evinced such incorporation by his signature. Regardless, given the Court's disposition of plaintiff's ADA claims, *infra*, these unauthenticated documents are without relevance.

The motion to strike (Docket Entry No. 80) is GRANTED.

### *Summary Judgment Standard of Review*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

### *Claims Regarding Strip Searches*

Plaintiff complains that, on February 26, 2005, he was strip searched in the presence of a female prison officer, who was "present and participated in a visual cavity search of Plaintiff with no extraordinary circumstances present." (Docket Entry No. 21, p. 11.) Specifically, plaintiff states that he and six other inmates were asked to strip, open their

3

mouths, lift their genitals, and expose their anuses in the presence of three male officers and the one female officer. *Id*. He asserts that during a second strip search some two years later in 2007, he was within "direct line-of-sight of female officers" who may have seen him. Plaintiff claims that these two strip searches violated his Fourth Amendment right to be from unreasonable searches because of the presence or participation of female officers.

"A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore v. Carwell*, 168 F.3d. 234, 236-37 (5th Cir. 1999) (citations omitted). However, the Fourth Amendment protects prisoners from searches and seizures that go beyond legitimate penological interests. *Id.* Searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed. *Id.* at 237. The test for a Fourth Amendment violation requires the balancing of the need for the particular search and the invasion of rights that are a result of the search. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Moore*, 168 F.3d at 237. Courts must consider the "scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. An inmate may recover nominal or punitive damages, despite lack of a physical injury, if he can successfully prove that prison officials violated his Fourth Amendment rights. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

The 2007 strip search, in which plaintiff asserts he was potentially visible to female officers, did not constitute a violation of plaintiff's Fourth Amendment rights. As noted by defendants in their motion for summary judgment, the Fifth Circuit has held that strip searches carried out in non-secluded areas of prisons and in the presence of prison employees of the opposite sex are not unconstitutional. *Tasby v. Lynaugh*, 123 Fed. Appx. 614, 615 (5th Cir. 2005); *Oliver v. Scott*, 276 F.3d 736, 747 (5th Cir. 2002); *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992). The 2007 strip search episode fell squarely within the parameters of these cases.

Regarding the 2005 episode, however, plaintiff maintains that the female officer had some level of participation in the strip search. The Fifth Circuit in *Moore* recognized that strip and cavity searches of male prisoners, carried out in non-emergency situations by female guards, can give rise to Fourth Amendment violations. 168 F.3d at 235-37. With respect to any potential Fourth Amendment claim, inmates do not have a right to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979).

The probative summary judgment in the instant case establishes that, on February 25, 2005, the day before the strip search, unknown inmates were unlawfully smoking cigarettes in plaintiff's prison dormitory. Prison officers discovered the security and safety breach, and immediately undertook an investigation. Cells were searched, inmates strip searched, and

5

some cigarettes were found. The investigation continued into the next day, when all of the dorm cells were again searched and inmates questioned and strip searched. Prior to being called in for strip searches, inmates were held in a chainroom, where they were told that "if [they] did not give names and information on who was smoking in the back of [the] dorm, [they] could be expecting to be subject to this type of treatment until [they] cooperate." (Docket Entry No. 74, Affidavit of Inmate Gary Willougby.) Plaintiff and five other inmate residents of the dorm were called into the administration office as a group for a strip search. According to two inmate affidavits submitted by plaintiff, the strip search episode unfolded as follows:

> [A female lieutenant] told us to get out of our clothes. This is a fairly small office for eleven people to be standing in. [She] went behind a small desk and sat down. She was only a few feet from us and was looking directly at us. She told us again to 'get out of 'em.' [Plaintiff] and [another inmate] started to argue with her but she said that if we continued to hold out on who was smoking that we could expect this on a regular basis. We would 'ride the heat' for the smokers. [Plaintiff] said something about constitutional rights and Abu Ghraibe, but [she] said to get out of them or go to [administrative segregation].
>
> [The female lieutenant] directed us on what to do. When we got undressed – stripped naked – she was telling us to open our mouths, lift our genitals, turn around and spread our buttock cheeks, and show the bottom of our feet. She could have reached out and touched us. I felt coerced into doing what she said and felt I had no choice.
>
> Before, during, and after the search we were told that we would be called out and this would be repeated everytime (sic) someone was smoking in the dorm, until we told them who it was.

(Docket Entry No. 42, Affidavit of Lavarro Jenkins.)

> [A female lieutenant] was sitting at a desk about four or five feet from me[.] [The female lieutenant] was in clear line of sight of all inmates. The other four inmates were about six to eight feet away on the other side of the small office. [Two other officers] were conducting the search. [Another officer] was providing security and [the female lieutenant] did not assist directly in the search of our clothing, but did assist in the visual cavity search of our rectums and mouths. She was looking directly at us and was instructing us on what to do next . . . We were told over and over that this would continue if we did not snitch on the other inmates who were smoking.

(*Id*., Affidavit of Gary Willougby.)

The parties do not dispute that the applicable prison regulation regarding inmate strip searches appears in Administrative Directive (AD) 03.22, which provides as follows:

> II. Strip Searches
>
> At times it may be necessary to strip search offenders to ensure the safety of offenders and staff and to detect the presence of contraband. Strip-searches are to be used only when directed by specific unit/facility post orders, or unit/facility departmental policy or when a supervisor believes there is reasonable cause to warrant such a search. The search shall be performed in a professional manner. Staff of the same gender shall conduct the search. Gender specific requirements are as follows:
>
> A. Female offenders shall not be strip-searched by, or in the visual presence of, male officers.
>
> B. For male offenders, if circumstances dictate that the search must be conducted by staff of the opposite gender, such searches are authorized under this policy only in extraordinary circumstances and when approved by a supervisor. If, under ordinary circumstances, a female officer is present in the vicinity of a male offender being strip-searched, the officer's duty is solely to provide security for the searching officer. The female officer shall not actively participate in the strip-search.

To the extent plaintiff complains that one or both of his strip searches were conducted in violation of AD 03.22, it is well established that the violation of a prison policy or regulation, without more, does not rise to the level of a constitutional violation for purposes of section 1983. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (determining, in the context of a section 1983 action, that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.").

Plaintiff additionally asserts that, because of the female officer's presence or participation, the 2005 strip search violated his Fourth Amendment rights as it was "sexually coercive" in nature. According to this argument, the strip search was nothing more than a subterfuge to sexually humiliate plaintiff and force him into "snitching" on the inmates who were smoking. Plaintiff states that this unlawful intent is implicit in the female officer's statement that "this would continue if we did not snitch on the other inmates who were smoking." The only evidence submitted by plaintiff in reference to this claim is the fact of the event itself – that a female officer was involved and that the inmates were told that the cell and strip searches would continue until the unlawful smokers were located. The Court finds conclusory and unsupported plaintiff's allegation that the sole purpose of the female officer's presence during the strip search was to sexually coerce and humiliate him into disclosing information. Defendant is entitled to summary judgment dismissing plaintiff's Fourth Amendment claim that the 2005 strip search was "sexually coercive."

Plaintiff also asserts, however, that AD 03.22 notwithstanding, his Fourth Amendment rights were violated by the female officer's *participation* in the strip search. In their motion for summary judgment, defendants initially sought summary judgment on the basis that the female officer observed, but did not participate in, the 2005 strip search. As this Court's review of the probative summary judgment evidence, however, reveals evidence to the contrary, summary judgment cannot be granted on this issue. Nor have defendants addressed in their motion for summary judgment plaintiff's challenges the constitutionality of AD 03.22.

As these two issues have not been addressed in the current summary judgment proceedings, the Court requests further briefing. Accordingly, defendants are ORDERED to file an amended motion for summary judgment, within forty-five days from date of this order, addressing plaintiff's claims that the 2005 strip search violated his Fourth Amendment rights based on participation of a female officer, and his challenge to the constitutionality of AD 03.22. Plaintiff may file a reply to the amended motion for summary judgment within thirty days thereafter. No further discovery motions or motions to supplement or amend may be filed.

### *Claims for Deliberate Indifference to Serious Medical Needs*

Plaintiff contends that defendants were deliberately indifferent to his serious medical needs by (1) forcing him to walk and/or wait in lengthy and uncomfortable pill lines and the "cage," an enclosed holding area for prisoners; and (2) allowing his "liver enzymes" and

9

hepatitis C viral load to increase due to improper medical treatment. Defendants seek summary judgment based on plaintiff's failure to exhaust these claims.

Defendants raised failure to exhaust in their answer (Docket Entry No. 43, p. 23), and move for summary judgment under that affirmative defense.[1] They argue specifically that plaintiff failed to exhaust his complaints regarding any long waits in the pill lines and the cage he experienced between July 2004 and July 2006. Plaintiff states that he filed a Step 1 grievance on September 8, 2004, complaining of heat exhaustion after waiting in the cage (Docket Entry No. 74, p. 23). However, the referenced grievance, dated September 17, 2004, reflects no filing and processing information. Although plaintiff may correctly aver that prison officials did not answer it, nothing shows that it was properly filed and received by the prison officials, and hence, no exhaustion is shown. *See Woodford v. Ngo*, 548 U.S. 81 (2006). In particular, plaintiff fails to show that the grievance did not violate (or was in compliance with) prison regulations limiting the number and timing of an inmate's grievances to one every seven days.

Plaintiff states that he subsequently did not file any applicable Step 1 grievances until August and October of 2006. The Court's docket in this case shows that plaintiff filed this lawsuit in July of 2006. Accordingly, these particular grievances, filed *after* commencement of the lawsuit, do not suffice as proof of exhaustion. The grievances referenced by plaintiff

---

[1] Contrary to plaintiff's contention, the Fifth Circuit in *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004) did not hold that prison officials waived exhaustion by stating in their answer that the inmate "may" have failed to exhaust administrative remedies.

10

as filed and exhausted in 2002 do not suffice to exhaust plaintiff's complaints regarding his July, 2004 to July, 2006 claims, as the subject matter and circumstances of the 2002 complaints were different from those here complained of by plaintiff. In short, plaintiff fails to prove that he exhausted administrative grievances on his pill line and "cage" claims prior to filing this lawsuit, and defendants are entitled to summary judgment on their affirmative defense of failure to exhaust.

Defendants further argue that plaintiff failed to exhaust administrative remedies regarding his increased liver enzymes and hepatitis C viral load complaints. Underlying plaintiff's claim are his allegations that, commencing June 1, 2006, defendants constructively withheld his ribavirin medication because he did not wait in the lengthy, slow-moving pill lines or the cage to receive the medication. (Docket Entry No. 21, p. 9.) In an attempt to justify his non-exhaustion of this claim, plaintiff states that the "recent incidents were not fully exhausted by the 90 day grievance process as doing so would have rendered the claim moot and allowed irreparable harm, therefore exhaustion is not required[.]" *Id*. This conclusory allegation is not borne out by the record, nor does it excuse plaintiff's failure to exhaust this particular claim. Plaintiff fails to meet his burden of proving exhaustion as to this issue, and defendants are entitled to summary judgment on the affirmative defense of failure to exhaust.

Even assuming proper and full exhaustion, plaintiff's allegations that his emergent hepatitis C infection was not treated properly or quickly enough are in the nature of a

11

disagreement with the medical treatment provided by his medical care providers. He admits to receiving medications, examinations, and treatment, but not at a level or within a time frame acceptable to him. Neither claims of negligence nor disagreement with the type of medical care received rise to the level of a constitutional issue under section 1983:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.

*Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted). Failure to exhaust notwithstanding, plaintiff's claim fails to rise to the level of a constitutional issue.

### *Claims for Deliberate Indifference to Health and Safety*

Plaintiff alleges that defendants were deliberately indifferent to his health and safety by (1) maintaining unsanitary, crowded prison showers that exposed him to infectious agents;[2] (2) forcing him to walk in the pill line in excess of his 50-yard walking restriction; and (3) allowing female officers to observe him while he is in the handicapped shower and toilet facilities. Defendants seek summary judgment based on plaintiff's failure to exhaust and failure to state a viable claim.

Defendants argue that plaintiff failed to exhaust his claim that unsanitary, crowded handicapped inmate showers exposed him to infectious agents. A review of plaintiff's

---

[2] Plaintiff expressly denies that he contracted hepatitis C from overcrowded handicap shower facilities at Jester III. (Docket Entry No. 73, p. 48.) Accordingly, the Court does not address that particular facet of his Eighth Amendment issue.

12

pleadings shows that, in raising this claim, he asserts that the exposure to infectious agents constituted the obvious risk to his health and safety. Defendants state, and the record shows, that plaintiff exhausted this particular issue on May 28, 2006, prior to the filing of this lawsuit. However, this Court's careful review of plaintiff's voluminous grievance exhibits – a significant number of which do not evince receipt or processing by prison officials – fails to reveal that plaintiff exhausted administrative remedies for an Eighth Amendment claim regarding overcrowded handicapped prisoner showers within the statutory limitations period or prior to his filing of this lawsuit. To the extent plaintiff alleges that he "filed" the grievances but that prison officials did not respond, plaintiff fails to show that the unprocessed grievances did not violate prison regulations limiting the number and timing of an inmate's grievances to one every seven days. *See Woodford v. Ngo*, 548 U.S. 81 (2006) (holding that to constitute exhaustion, grievances must be filed properly according to all relevant administrative regulations and procedures). That plaintiff had "too many other complaints" to grieve in excess of the seven-day limitation does not excuse his failure to exhaust this or any other claim made the basis of this lawsuit.

Defendants further assert as unexhausted plaintiff's claim regarding the 50-yard walk to the pill line. By this claim, plaintiff complains that being required to walk over fifty yards to the pill window violated his medical restrictions. None of the underlying incidents alleged by plaintiff in his more definite statement occurred within the applicable two-year statute of limitations. (Docket Entry No. 21, pp. 9, 14-15, 22.) Further, plaintiff's Step 1 grievance

13

was filed on August 26, 2006, *after* commencement of this litigation. Plaintiff fails to meet his burden of proving exhaustion as to this issue, and defendants are entitled to summary judgment on the affirmative defense of failure to exhaust.

Defendants correctly argue that plaintiff fails to raise a viable Eighth Amendment claim in his allegation that the handicapped inmate shower and toilet areas were observable to female officers. Plaintiff does not dispute that the officers were present for purposes of security and that security is a legitimate penological interest, but argues that having *female* security guards at those locations did not promote a legitimate penological interest. This argument is foreclosed by Fifth Circuit precedent. In *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992), the Fifth Circuit relied on *Barnett v. Collins,* 940 F.2d 1530 (5th Cir. 1991) (unpublished), which "held that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of the female guards is required to protect a legitimate government interest such as maintaining security at a correctional facility". *Letcher*, 968 F.2d at 510. *Barnett* involved the use of female guards in guard towers giving a full view of male inmates taking showers. Accordingly, plaintiff's instant claim concerning the ability of female guards to view him in the restroom and shower is without merit and defendants are entitled to summary judgment dismissing this claim.

### *Americans with Disabilities Act*

Title II of the Americans with Disabilities Act (ADA) provides as follows:

> [n]o qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added). The Supreme Court recognizes that Title II of the ADA applies to inmates in state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). Under the Act, plaintiff here may pursue his exhausted ADA claims against the State of Texas and its agency, TDCJ.

To present a *prima facie* ADA claim, plaintiff must establish that (1) he is a qualified individual with a disability; (2) he was discriminated against by the State of Texas or TDCJ; and (3) the discrimination occurred because of his disability. *See Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002). As punitive damages are unavailable under the ADA, plaintiff is necessarily seeking a declarative judgment or injunctive relief against the defendants in their official capacities. *See Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002); *McCarthy ex re. Travis v. Hawkins*, 381 F.3d 407, 413-14 (5th Cir. 2004).

Plaintiff complains that the State of Texas and TDCJ violated the ADA in the following particulars:

15

  (1)  providing him hot, uncomfortable polyester shirts to wear;

  (2)  failing to provide handicapped recreational facilities;

  (3)  overcrowded handicapped shower and prisoner facilities exposed him to disease and infectious agents;

  (4)  denying him a hospital mattress in his cell;

  (5)  allowing lengthy and uncomfortable pill lines and waits in the cage; and

  (6)  exposing him to excessive heat during the summer months.

These instances will be analyzed individually or grouped as necessary for clarity and efficiency in addressing plaintiff's claims.

  Defendants allege that plaintiff failed to exhaust his administrative remedies through the prison grievance system as to incidents (1) and (2) regarding hot, uncomfortable polyester shirts and handicapped recreational facilities. Plaintiff's own records reflect a Step 1 grievance (Docket Entry No. 74, p. 244) regarding denial of a *button* shirt on September 23, 2004. The grievance shows no filing or processing information from prison officials, and plaintiff admits it was never processed or returned by prison officials. Regardless, plaintiff makes no assertion, and the record does not show, that he exhausted prison grievances as to "hot, uncomfortable shirts." He concedes that he did not exhaust administrative remedies as to the recreational facilities issue. (Docket Entry No. 73, p. 75.) Defendants raised the affirmative defense of non-exhaustion in their answer, and they are entitled to summary judgment dismissing these claims for failure to exhaust.

16

Defendants are further entitled to summary judgment dismissing these claims, as plaintiff fails to establish any *prima facie* ADA violation. His claims are without merit. Plaintiff provides no probative summary judgment showing that these complained-of events were discriminatory incidents that occurred *because of* his disability, and he fails to establish an ADA violation. The fact that these events occurred does not stand as probative summary judgment evidence that they were actionable under the ADA. *See*, *e.g.*, *Davidson v. Texas Department of Criminal Justice*, 91 Fed. Appx. 963 (5th Cir. 2004) (unpublished) (affirming the dismissal of an ADA lawsuit where the plaintiff failed to show that he was adversely treated because of his handicap); *Shaw v. Texas Department of Criminal Justice*, 46 Fed. Appx. 225 (5th Cir. 2002) (unpublished) (holding that an inmate denied participation in a program for handicapped prisoners because of a notation in his record labeling him a member of a militant organization failed to show an ADA violation because the adverse treatment was not due to his disability). Accordingly, defendants are entitled to summary judgment dismissing these claims for violations of the ADA.

### *Conclusion*

The Court ORDERS as follows:

    (1)    The defendants' motion to strike (Docket Entry No. 80) is GRANTED.

(2) The defendants' motion for summary judgment (Docket Entry No. 61) is GRANTED IN PART as to plaintiff's Fourth Amendment claims regarding the 2007 strip search; his claims under the ADA; and his Eighth Amendment claims for deliberate indifference to serious medical needs, heath, and safety. These claims are DISMISSED with prejudice.

(3) The defendants' motion for summary judgment (Docket Entry No. 61) is DENIED IN PART as to plaintiff's Fourth Amendment claims regarding the female officer's participation in the 2005 strip search and plaintiff's challenge to the constitutionality of AD 03.22.

(4) Defendants are ORDERED to file, by APRIL 10, 2009, an amended motion for summary judgment as to plaintiff's Fourth Amendment claim regarding the female officer's participation in the 2005 strip search and his challenge to the constitutionality of AD 03.22.

(5) Any and all other motions pending as of the date of this order are DENIED AS MOOT.

(6) This is an INTERLOCUTORY ORDER.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on February 17, 2009.

_____
Gray H. Miller
United States District Judge